30225.   CONE *v.* NEW YORK LIFE INSURANCE COMPANY.

DECIDED NOVEMBER 16, 1943.

128

*Roy S. Drennan, Croom Partridge,* for plaintiff.

*Bryan, Carter & Ansley,* for defendant.

FELTON, J. (After stating the foregoing facts.) 1. Count one of the plaintiff's petition relies for a recovery on an estoppel

by virtue of the quoted letter from the cashier of the company to the insured in 1925, and it is specifically stated in the brief of counsel that no contention is made that the cashier had any real or apparent authority to change the terms of the policy sued on, nor that the letter so written by the cashier had that effect. The policy which is the basis of this action has the following material provisions:

"This policy is automatically non-forfeitable from date of issue, as follows: First—If any premium is not duly paid, and if there is no indebtedness to the company, this policy will be endorsed for the amount of paid-up insurance specified in the table on the second page, upon written request therefor; or if no such request is made, the insurance will automatically continue from said date for $1,000 for the term specified in said table and no longer. Such paid-up or continued insurance shall be subject to the provisions of this policy, without the further payment of premiums, but without participation in profits, without premium return, or the right of securing cash loans. Third—If the non-forfeiture provisions in either of the two preceding paragraphs become operative, the insured may resume full participating premium-paying membership at any time within five years thereafter, upon written application therefor, and the payment of premiums to the date of resumption, with interest at the rate of five per cent. per annum . . subject to evidence of insurability satisfactory to the company.

"General provisions. (1) Only the president, a vice president, the actuary or the secretary has the power in behalf of the company to make or modify this or any contract of insurance or to extend the time for paying any premium, and the company shall not be bound by any promise or representation heretofore or hereafter given by any person other than the above. (2) Premiums are due and payable at the home office. . . If any premium is not paid on or before the day when due, or within the month of grace, the liability of the company shall be only as hereinbefore provided for such case.

"Profits after accumulation period.—If this policy is continued beyond the accumulation period, with payment of premiums, profits shall be apportioned at the end of every five years thereafter during the continuance of the policy.

"This agreement is made in consideration of the sum of $20.55,

the receipt of which is hereby acknowledged, and of the payment of a like sum on the 29th day of March until 20 full years' premiums have been paid, and of the payment in like manner of $19.62 in every year thereafter during the continuance of this policy."

Attached to the policy, and a part thereof, is a table headed: "Table of paid-up or continued insurance and of cash loans." This table shows that at the expiration of the 24th year paid-up insurance amounted to $504, and that there was continued insurance for 16 years and 10 months; at the expiration of 26 years there was $542 paid-up insurance, and continued insurance for 17 years and 1 month; and at the expiration of 30 years there was $612 paid-up insurance, and continued insurance for 16 years and 9 months.

Aside from the tontine, or accumulation features of this policy, it will be seen that it is also an ordinary life policy, with premiums payable thereon during the life of the insured. The consideration for the policy is recited in the policy as being a certain sum for the first 20 years, and a slightly smaller sum "in every year thereafter during the continuance of the policy."

In April 1925, the cashier of the company wrote to the insured the letter set out in the statement of facts preceding this opinion. At the time that letter was written the premium due March 29, 1923, had become due and was unpaid, and in so far as the petition discloses there was no indebtedness to the company. The failure to pay this premium due March 29, 1923, in the absence of any indebtedness to the company, made operative the first non-forfeiture provision of the policy. It is well to examine that provision. Upon its becoming operative the insured had an election to make within a certain period of time. Had he made this election, the company, under the terms of the policy, would have endorsed the policy for the amount of paid-up insurance set out in the table attached to the policy. This would mean that the insurance would be paid up under this policy for $504, *for the life of the insured.* However, when the insured failed to make the election which he was entitled to make, the second part of the provision became effective, which provided that the policy would be *continued* automatically for the period set out in the table mentioned above and for no longer, which in this case was 16 years and 10 months. This would mean that instead of being paid up for the life of the insured for the smaller amount under the first part of the provision,

it was paid up for the amount of the policy, $1,000, for a limited term as set out in the table. It follows as a natural consequence that when the cashier wrote the letter in 1925, he stated the condition of the policy at that time; that is, that the policy was paid up for the face value of the policy and there were no further premiums to be paid. It is true that he did not inform the insured that the policy was paid up for only a definite term, but the insured was in possession of the policy, and by its terms the only way it could become paid up for $1,000, with the premiums paid for the length of time they were paid on this policy, was in the way mentioned in the policy, which could be readily ascertained by a cursory examination of the policy. That this is readily discernible is shown by the fact that a mere reference to the table of paid-up insurance in the policy shows that if the premiums thereon had been paid for 30 years, the amount for which the policy would be paid up for the life of the insured would be only $612. The insured had the policy in his possession, and actually attached the letter to the policy. This court will not say that the letter which stated to the insured what was already provided in the policy was so misleading to him that the company would now be estopped to deny that the policy was paid up for the life of the insured.

And this is true for another reason. It is not alleged in the petition just what the telephone conversation between the insured and the cashier of the company consisted of. This court cannot say from the allegations in the petition that the insured called the company for the purpose of having the insurance reinstated as provided in the policy. It is true that at the time the letter was written he had the right to become again a premium-paying member; but it is not alleged in the petition that at the time of the telephone conversation referred to in the letter, nor at the time the letter was received, the insured was an insurable risk, and that because of the misleading nature of the letter he desisted in his effort to have the policy reinstated. It is as reasonable to assume that the insured was dissatisfied with the returns from the policy, or disliked the idea of paying premiums thereon during his lifetime, and seeing the provisions with reference to the non-forfeiture of the policy, called the company with reference to it. The letter might well have been written in answer to the question, "Is my policy paid up for $1,000 for 16 years and 10 months?" The first count fails

to affirmatively allege that the insured was misled by the letter, or that he suffered damage or injury because of it.

As was stated at the outset the policy here was a "tontine," "accumulation," or "deferred dividend" policy. The insured, under the terms of the policy, first participated in the profits at the end of the accumulation period, which in this case was 20 years. The policy also provided that if the policy was carried beyond that period with payment of premiums, profits would be apportioned every five years. If we hold the contention of the insured to be sound; that where the premiums were paid for four years beyond the accumulation period the insured is entitled to have four-fifths of the profits apportioned to policies of like age and amount credited to this policy, we would change the contract from an accumulation or deferred dividend policy to an annual dividend policy. As was said by the Court of Appeals of Kentucky in Jefferson v. New York Life Insurance Co., 151 Ky. 619 (152 S. W. 780), "A deferred dividend policy cannot be treated by either the company or the assured, as though it was an annual dividend policy, any more than an ordinary life policy could be held to be subject to the provisions of a term policy. . . . No dividends were to be apportioned to the policy until it had been in force for 15 years. By carrying out his contract and paying his premiums annually for 15 years, if he had lived that long, the assured would have been entitled to participate in the dividend distribution, but not otherwise." We think this reasoning applies with equal force here, and that the insured is not entitled to credit for four-fifths of the profits apportioned to other like policies, the apportionment being made *one year after this policy lapsed, and under the terms of which the insurance was extended for 16 years and 10 months without participation in profits.* "The policy is the contract entered into by the assured with the company. Its terms express their agreement, and by its provisions each is bound. There is nothing peculiarly sacred about a contract of insurance, which places it upon a plane above, or different from that upon which other contracts rest." Jefferson v. New York Life Ins. Co., supra. See annotations in 92 A. L. R. 706; 6 A. L. R. 1401; *Empire Life Insurance Co.* v. *Wier, 135 Ga.* 130 (68 S. E. 1035). The court consequently did not err in sustaining the demurrers to count one of the petition.

■ What has been said in the foregoing division of this opinion

with reference to the credit of four-fifths of the profits apportioned to like policies to the policy in this action, applies with equal force and for the same reasons to the question of using the four-fifths of the profits to extend the insurance beyond the period for continued insurance shown in the table attached to the policy. The time for the apportionment not having arrived when the policy lapsed, the company was under no duty to apportion any dividend to it, and to use that dividend to extend the insurance beyond the term shown in the table.

The court did not err in sustaining the demurrers, and in dismissing the action.

*Judgment affirmed. Stephens, P. J., and Sutton, J., concur.*